The Chief Justice
delivered the opinion of the court.
Wilcoxen having obtained a certificate for a settlement, and pre-emption, assigned the same to M’Clanahan, who gave his bond conditioned to convey to Wilcoxen one half of the land that should be obtained thereby: This bond Wilcoxen assigned to Henderson, who gave his obligation to convey to Wilcoxen all the land that should be obtained in virtue thereof above four hundred acres. M’Clanahan caused entries and surveys to be made of the settlement and pre-emption, and obtained patents therefor in his own name. A part of the land he lost by a decree in a suit brought against him by Whitledge, and he relinquished part to Waits, whose claim interfered. And there being also an interference with a pre-emption in the name of Keller, M’Clanahan purchased up part of it at the rate of fifty pounds per hundred acres. In the mean time Henderson having departed this life, his heirs brought this suit against M’Clanahan to compel a division of the land, and M’Clannahan having died, the suit was revived against his heirs and devisees. Pending the suit, one of the devisees procured an assignment of the bond given by Henderson to Wilcoxen for all the land Henderson should obtain above four hundred acres, and agreed that the other devisees should be entitled to the benefit of the bond.
In this state of things the cause came on to be heard, and the circuit court pronounced an interlocutory decree, directing the whole of the settlement and pre-emption to be divided into two equal moieties, each moiety to contain an equal quantity of safe land—that the quantity relinquished to Waits, so far as it was not within the interference and recovery by Whitledge, should be included in the moiety to be alotted to the defendants, and be considered as safe land;—that the complainants should be entitled to the benefit of the purchase of Keller’s claim, not exceeding one half, and should pay therefor in proportion to the part thereof which should be alotted to them, the price given by M’Clanahan, with interest;—that the defendants should convey to the complainants four hundred acres of the safest of the moiety alotted to the complainants, retaining the residue in virtue of the bond given by Henderson to Wilcoxen; and that the defendants should pay rents and receive a com *389 pensation for the improvements upon the part conveyed by them to the complainants. Commissioners were appointed to make the division, and to value the rents and improvements, in pursuance of the interlocutory decree; and having made a report accordingly, a final decree was thereupon entered up, from which the defendants have prosecuted this appeal.
If a trustee purchases in a claim adverse to trust estate, he purchases for the benefit of the cestui que trust.
If an ex’or compounds debts for less than the nominal amount, it is for the benefit of the creditors or distributees.
The first question which seems material to be investigated is. whether the complainants are entitled to the benefit of the purchase of Keller’s claim, and upon what terms?
This is the most important point in the case, inasmuch as Keller’s claim covers a considerable part of the land in contest, and from the proofs and exhibits in the cause, is the best claim.
M’Clanahan must unquestionably be considered as a trustee for Wilcoxen or his assignees, to the extent of a moiety of Wilcoxen’s settlement and pre-emption; and considered in the character of a trustee, he cannot, consistent with the principles of good faith, be allowed to create in himself an interest in opposition to the interest of his cestui que trust. Upon this ground the English chancellors have held, that a trustee cannot become the purchaser of that which he holds in trust; and that, in general, whatever a trustee does for the advantage of the trust estate, shall accrue to the benefit of the cestui que trust. Thus, if a trustee or executor compound debts or mortgages, or buy them in for less than is due on them, he shall not take the benefit of it himself, but other creditors and legatees shall have the advantage of it. So if a trustee obtain the renewal of a trust term, such renewal shall be for the benefit of the cestui que trust. 2 Fonb. 187, (noter,) and the authorities there cited.
It follows, therefore, that the complainants are entitled equally with the defendants to the benefit of the purchase of Keller’s claim. But upon what terms ought they to be permitted to participate in this benefit? The circuit court determined that they should do so upon paying the purchase money with interest, of the proportion of the claim of Keller, which should be alotted to them; and less than one half of it having been alotted to them, they were of course decreed to pay less than one half of the purchase money. This, we apprehend, cannot be justified upon principles of equity; for the purchase being the means of securing more safe land, subject to the division between the parties, the *390 complainants would be thereby entitled to more in the same proportion; and whether more or less of Keller’s claim was allotted to them, there could be no difference in the amount of the benefit to be derived from the purchase, for if more was allotted to them of that they would be entitled to less of the residue; and if less of that was allotted to them, they would be entitled to more of the residue: So that in any mode of making an equal division, the complainants would be as much benefited by the purchase as the defendants; and as the benefit is equal, the burthen of paying for it should be so, according to the maxim "qui sentit commo-dum sentire debet et onus.” The circuit court therefore erred in not compelling the complainants to pay one half the purchase money, given by M’Clanahan for Keller’s claim, so far as it interferes with Wilcoxen’s settlement and preemption.
A man holding half a tract of land in his own right, & half as trustee for another, and buying an adverse better claim, acts for the joint benefit of himself and his cestui que trust, but the latter must refund half the sum paid, with interest.
A man so holding title, may relinquish to a valid opposing title; but he must shew the superiority of such opposing title, or on a division between himself and his cestui que trust, he must take the land relinquished in his half.
The solemnity of a deed implies a consideration, & if omitted to be expressed in the deed, the omission may be supplied by averment.
The next question thought material to be considered is, whether the circuit court erred in directing the part of the land, relinquished by M’Clanahan to Waits, to be considered as safe land, and included in the defendants’ moiety.
The defendants alledge, that the relinquishment was executed in consequence of an agreement with Waits to abide the event of a suit between him and Whitledge, in which Waits succeeded. But there is not a particle of proof in support of this allegation; and being destitute of proof, it must be considered as unfounded Had Waits’ claim been a valid one, M’Clanahan might have been compelled by suit to have relinquished; and what he was compelled to do, he might have done without compulsion. But Waits’ claim is wholly unsupported; and the deed of relinquishment to him, by M’Clanahan, must, therefore, be considered as made without any just cause, and ought not to affect the right of the complainants. The argument, that the deed of relinquishment was without consideration, and was therefore ineffectual to transfer the right of M’Clanahan to Waits. cannot avail the defendants. Whether a consideration be necessary to make the deed valid, is a point we do not think material to decide; for the law, from the solemnity of the instrument, implies a consideration; and though none be expressed in the deed, it may be supplied by averment. But whether the deed be effectual or not, to transfer M’Clanahan’s right, is immaterial as it regards this case: for if it be not effectual to pass the right, the land is in fact safe; and if it be effectual to pass the right, as the deed *391 was made without any apparent cause, which can affect the right of the complainants, the defendants can have no just ground to complain that the land should be considered as safe, and be allotted to them. The decree, therefore, is, in this respect, correct.
In dividing lands between two persons, one of whom has had the possession, the other only an equity, they are to be considered as tenants in common; and if improvemnts made by the possessor is alloted to other, he should pay the improver therefor, but the improver should pay rents for the land.
The only remaining question, which we deem material to be considered, relates to the subject, of the rents and improvements.
On the one side it is contended, that the defendants are not entitled to a compensation for the improvements; and on the other it is urged, that the complainants are not entitled to the rents ond profits.
.But neither of these positions, we apprehend, can be sustained. In equity the defendants must be considered as tenants in common with the complainants; and thus considered, they had an equal right to each and every part of the whole tract. Their possession must, therefore, be deemed rightful, and the improvements made by them on the land, which has, by the partition, been allotted to the complainants, having accrued thereby to the benefit of the complainants, they ought to compensate the defendants therefor.
On the other hand, if they are bound to pay for the improvements because by the partition and allotment those improvements havee accrued to their benefit, it follows as a necessary consequence that they are entitled to receive the rents and profits, at least so for as to allow them a set-off against the value of the improvements to the extent of the rents and profits; and it is only to that extent the circuit has decreed
As to the rents and improvements, therefore, as well as to the partition directed by the circuit court, the decree is correct. But that court having erred in not compelling the complainants to refund, with interest, one half of the money paid by M’Clanahan for Keller’s claim, so far as it interfered with Wilcoxen’s settlement and pre-emption, the decree, as to the amount directed to be paid by the complainants, must be reversed with costs, and the cause remanded, that a decree may be entered according to this opinion.
On rendering this decree, the heirs of M’Clanahan petitioned for and obtained a rehearing. The cause was rear *392 gued, and the Chief Justice, on the 17th June, 1820, delivered the following opinion:—
17 June,1820.
Bibb for appellants, Hardin and Talbot for appellees.
We are still of opinion that M’Clanahan must be considered as a trustee for Wilcoxen and his assignees, in making the purchase of Keller’s claim, so far as it interfered with Wilcoxen’s settlement and pre-emption; and that Wilcoxen and his assignees, to entitle themselves to the benefit of the purchase, should pay one moiety of the purchase money with interest, whether more or less than a moiety should be allotted to them in the division.
The court below had adopted the principle of requiring the complainants to pay only for that portion of Keller’s claim which should be allotted to them, and less than a moiety of Keller’s claim having been allotted to them by the division decreed by that court, we had supposed that the complainants were decreed to pay less than they ought to have been required to pay, and upon that ground alone the decree was reversed.
Upon farther reflection, however, we perceive we were mistaken in the supposition that the complainants ought, according to the principles of the former opinion, to be, compelled to pay a moiety of the purchase money paid for Keller’s claim. For the defendants themselves represent Wilcoxen as to three sevenths of his half of the settlement and pre emption, and the complainants are in truth the assignees of only four sevenths, and have obtained a decree for no more. Upon the principles, therefore, adopted in the former opinion of this court, the complainants could have been decreed to pay only four sevenths of half of the purchase money paid by M'Clanahan for Keller’s claim. And it appears that they were in fact decreed to pay for 241 acres, which was more than four sevenths of the one half of Keller’s claim purchased by M’Clanahan within the interference with Wilcoxen’s settlement and pre-emption. So that the defendants, on that ground, have no cause of complaint
The former decree of this court, so far as it reverses the decree of the circuit court, must be set aside and held for nought, and the decree of that court must be affirmed with costs.